IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| ELISTON F. GEORGE, | ) | |
|     Plaintiff, | ) | Civil Action No. 7:15cv00320 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| Y. TAYLOR, *et al.*, | ) | By: Norman K. Moon |
|     Defendants. | ) | United States District Judge |

Plaintiff Eliston F. George, a United States Virgin Islands inmate housed in Virginia and proceeding *pro se*, filed a civil rights action pursuant to 42 U.S.C. § 1983 alleging that the defendants violated his First Amendment rights. Defendants moved to dismiss and George responded, making this matter ripe for disposition.[1] After reviewing the record, I conclude that defendants' motion to dismiss must be granted.

I.

George alleges that on January 20, 2015, he requested that defendant Counselor Farmer photocopy "some legal mail documents that [were] needed to file a writ of mandamus in the Virgin Islands court." George alleges that Farmer told him that defendant Institutional Program Manager Taylor told Farmer to make legal copies in the "treatment department." George asked Farmer if he could go with him to make the copies and Farmer said, "no." George alleges that Taylor has "enacted and enforced an unwritten policy" at Keen Mountain Correctional Center ("KMCC") that requires all copying of prisoner's documents be done in the treatment department. George states that the unwritten policy does differentiate between confidential,

---

[1] To the extent George may be attempting to raise a new claim in his response to the motion to dismiss, I note that, as George is well aware, any proposed amendment must be made in accordance with Rule 15 of the Federal Rules of Civil Procedure. Because his is not, any new claim raised in George's response is not considered by the court at this time. George may raise any such claim in a separate action.

privileged legal documents and other "unprotected" documents, but he does not specify how.[2] According to George, the Implementation Memorandum to Department Operating Procedure 866.3 states that, "since the courts will accept handwritten briefs, [KMCC] is not mandated to provide photocopying services. However, whenever possible, photocopying services of legal documents will be provided to an offender."

George filed an informal complaint about Farmer's "refusal" to make the photocopies of George's "confidential legal mail" in George's presence. In response, Taylor stated that, "[c]opying services are performed in the treatment department where we have appropriate and adequate equipment available. Counselors are professional employees who use appropriate discretion in providing copying services for offenders." George then filed a regular grievance which was rejected because it was deemed a request for services. The intake decision was upheld on appeal. George claims that defendants Taylor and Farmer violated his First Amendment rights by failing to make the photocopies in his presence pursuant to the "unwritten" policy.

George alleges that he needed copies of "orders and affidavits" to be able to prepare a petition for a writ of mandamus to file in the United States Court of Appeals for the Third Circuit, in order to compel the District Court for the Virgin Islands to issue a decision in his § 1983 action that had been pending for approximately 20 months. He also alleges that he has a petition for a writ of *audita querela* pending in the Virgin Islands and he "wishes to add additional support from trial transcripts and affidavits." He claims that he has the "only copy of the trial transcript" because the "original was destroyed in a courthouse flood years ago."

---

[2] Further, George states that it is not possible for a counselor to be required to make legal copies for an action in which he or she is a party because inmates must sign a document indicating that the counselor is not a party to the action being copied.

2

**II.**

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint to determine whether the plaintiff has properly stated a claim; "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). In considering a Rule 12(b)(6) motion, a court must accept all factual allegations in the complaint as true and must draw all reasonable inferences in favor of the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Legal conclusions in the guise of factual allegations, however, are not entitled to a presumption of truth. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

Although a complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and quotations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level," *id.*, with all the allegations in the complaint taken as true and all reasonable inferences drawn in the plaintiff's favor, *Chao v. Rivendell Woods, Inc.*, 415 F.3d 342, 346 (4th Cir. 2005). Rule 12(b)(6) does "not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Consequently, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id*. A claim is plausible if the complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," and if there is "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.

## III.

George alleges that defendants Taylor and Farmer violated his First Amendment rights by failing to copy his documents in his presence and by having the "unwritten" policy which requires counselors to copy documents in an area outside the inmates' presence. I conclude that George's allegations are insufficient to state a cognizable § 1983 claim and, therefore, will grant defendants' motion to dismiss.

Inmates have no specific constitutional right to photocopies. *See, e.g., Lyons v. Clark*, 694 F. Supp. 184, 188 (E.D. Va. 1988); *Cottrell v. Jabe*, No. 7:10cv505, 2012 U.S. Dist. LEXIS 28445, at *37-38, 2012 WL 830469, at *13 (W.D. Va. Feb. 17, 2012). Rather, to make out a claim under § 1983 based on denial of copying privileges, an inmate must show that the denial prevented him from exercising his constitutional right of access to courts. *Jones v. Franzen*, 697 F.2d 801, 803 (7th Cir. 1983). "The reasonableness of a prison's photocopy policy becomes relevant only after the prisoner has shown that the policy is impeding that access, for if it is unreasonable, but not impeding, he has not made out a prima facie case of violation of his constitutional rights." *Id.*

Inmates have a constitutional right to reasonable access to the courts. *See Lewis v. Casey*, 518 U.S. 343, 351-53 (1996); *Bounds v. Smith*, 430 U.S. 817, 838 (1977); *Ex parte Hull*, 312 U.S. 546 (1941). In order to bring a denial of access to the courts claim, a plaintiff must (1) identify a nonfrivolous, arguable underlying claim; (2) show official acts frustrating litigation; and (3) propose a remedy that may be awarded as recompense but not otherwise available in some suit that may yet be brought. *Christopher v. Harbury*, 536 U.S. 403, 415 (2002). The right of access to the courts "is ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court." *Id.* Thus, in order to state a constitutional claim of

4

denial of access to the courts, a plaintiff must allege specific injury resulting from the alleged denial. *See Lewis*, 518 U.S. at 349 (holding that an inmate alleging denial of access to the courts must be able to demonstrate "actual injury" caused by the policy or procedure in effect at the place of incarceration in that his non-frivolous legal claim had been frustrated or was being impeded); *Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996) (plaintiff failed to identify any actual injury resulting from official conduct); *Strickler v. Waters*, 989 F.2d 1375, 1384 (4th Cir.1993) (Prisoner had a "basic requirement that he show specific harm or prejudice from the allegedly denied access."). The predicate claim must be described well enough to apply the "nonfrivolous" test and to show that the "arguable" nature of the underlying claim is more than hope. *Christopher*, 536 U.S. at 416.

The right to access to the courts is intended to permit inmates "to litigate post-conviction legal issues, such as habeas corpus and civil rights actions." *Harvey v. Horan*, 278 F.3d 370, 386 (4th Cir. 2002). However, "a state has no affirmative duty to 'enable the prisoner to discover grievances, and to litigate effectively once in court." *Id.* (citing *Lewis*, 518 U.S. at 354). "Thus, although a state must provide prisoners with meaningful access to the legal system, it is not obligated to maximize the prisoner's chances of prevailing in his postconviction action." *Id.* While prison officials may not "actively interfer[e] with inmates' attempts to prepare legal documents, or file them," *Lewis*, 518 U.S. at 350, "[p]rison policies that cause mere inconvenience or delay of an inmate's litigation efforts do not violate his right to access the courts," *Makdessi v. Hinkle*, No. 7:14CV00034, 2014 U.S. Dist. LEXIS 63231, at *10, 2014 WL 1782820, at *4 (W.D. Va. May 5, 2014). "The fact that an inmate may not be able to litigate in exactly the manner he desires is not sufficient to demonstrate the actual injury element of an

5

access to courts claim." *Godfrey v. Washington County, Va., Sheriff*, No. 7:06cv187, 2007 U.S. Dist. LEXIS 60519, at *39, 2007 WL 2405728, at *13 (W.D. Va. Aug. 17, 2007).

George fails to state sufficient facts from which I can determine that the petition for a writ of mandamus or the "additional support" for his petition for writ of *audita querela* which he has refrained from filing is a not frivolous. Concerning the petition for a writ of mandamus, George alleges that he intended to request that the Third Circuit compel the Virgin Islands District Court to issue a decision in a § 1983 action that George filed. The complaint in that case had been pending for approximately 20 months at the time George sought copying services.[3] *George v. Wilson, et al.*, Civil Case No. 1:13cv00047-WAL-GWC (D.V.I. Apr. 20, 2013). "The remedy of mandamus is a drastic one, to be invoked only in extraordinary circumstances." *Kerr v. United States Dist. Ct.*, 426 U.S. 394, 402 (1976). "The party seeking mandamus relief carries the heavy burden of showing that he has no other adequate means to attain the relief he desires and that his right to such relief is clear an undisputable." *In re Beard*, 811 F.2d 818, 826 (4th Cir. 1987) (internal quotations omitted); *see also First Fed. Sav. & Loan Ass'n v. Baker*, 860 F.2d 135, 138 (4th Cir. 1988). George has failed to describe his predicate claim well enough to apply the "nonfrivolous" test and to show that the "arguable" nature of the underlying claim is more than hope. *See Christopher*, 536 U.S. at 416.

With regard to the petition for *audita querela*, George alleges that he wants to file a transcript and affidavits as "additional support" for his pending petition. George alleges that he has "newly discovered evidence in the form of recanted testimony that is also corroborated by

---

[3] In that action, George alleges that Virgin Islands officials denied him access to the courts by failing to send Virgin Islands legal materials to Virginia for George's use. He also alleges that his transfer to Virginia was unlawful. Some defendants have not yet been served and those who have been served filed a motion to dismiss the action. Defendants assert that they sent copies of Virgin Islands legal materials to George's place of confinement on February 10, 2014 and sent new materials on May 16, 2016. They also argue that George's transfer under the Interstate Corrections Compact was not unlawful.

6

Case 7:15-cv-00320-NKM-RSB   Document 30   Filed 02/21/17   Page 6 of 8   Pageid#: 153

authentic record evidence clearly establishing that the trial Judge knew that there were exculpatory statements involved in plaintiff's case." Writs of *audita querela* are available when there is a legal objection to a conviction which has arisen after sentencing for which there is no other remedy. *United States v. Hairston*, 2009 U.S. Dist. LEXIS 26141, at *4, 2009 WL 891929, at * 2 (N.D. W.Va. March 30, 2009) (quoting *United States v. LaPlante*, 57 F.3d 252, 253 (2nd Cir. 1995)). Writs of *audita querela*, however, may be issued "only to the extent that they 'fill the gaps' in the current system of federal post-conviction relief." *Hairston*, 2009 U.S. Dist. LEXIS 26141, at *4, 2009 WL 891929, at *2 (quoting *Doe v. INS*, 120 F.3d 200, 203 (9th Cir. 1997)). A brief review of George's pending petition for writ of *audita querela* shows that George filed three affidavits and two transcript excerpts with the petition and that a *sua sponte* Report and Recommendation was issued in the case well before George filed this action. *George v. Wilson*, Civil Action No. 3:14cv00067-CVG-RM (D.V.I.). The Report determines that the writ of *audita querela* is not available to George in the circumstances of his case and, thus recommends that his petition be dismissed. George does not describe the affidavits or transcript that he wishes to provide the Virgin Islands District Court as "additional support" and he has not described how the "additional support" would demonstrate that he is entitled to writ of *audita querela*. Thus, I cannot determine that George has a nonfrivolous, arguable underlying claim.

However, even if George demonstrated that he had nonfrivolous, arguable underlying claims, he has not demonstrated that the defendants' acts have frustrated his litigation. George does not allege that photocopying services are not available to him. In fact, photocopying service is available. Instead, George complains that the photocopies are made outside of his presence, which, he claims, violates confidentiality. However, the documents for which he sought copying were orders, affidavits, and transcripts which he states were "for the purpose of

being filed with the court as part of the public record." George has not explained how any confidentiality is violated if his counselor, who is not a party to the petitions for writ of mandamus or *audita querela*, were to see the documents he intends to file as part of the public record. Moreover, George does not allege that he could not send the court his original copies of the documents. Therefore, Geroge has not shown that the defendants have frustrated his litigation. Accordingly, I conclude that George has not established the violation of a constitutional right and the defendants are entitled to qualified immunity.[4] Therefore, I will grant defendants' motion to dismiss.[5]

**ENTER**: This 21st day of February, 2017.

NORMAN K. MOON
UNITED STATES DISTRICT JUDGE

---

[4] "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Once a defendant raises the qualified immunity defense, a plaintiff bears the burden to show that a defendant's conduct violated the plaintiff's right. *Bryant v. Muth*, 994 F.2d 1082, 1086 (4th Cir. 1993).

[5] George also alleges that the defendants would violate attorney-client privilege by reading the documents that he intends to file with the court. However, attorney-client privilege does not apply in this circumstance. The privilege applies only if (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client. *In re Grand Jury Subpoena: Under Seal*, 415 F.3d 333, 338 n.3 (4th Cir. 2005). Accordingly, George's claim fails.

8